Your Honor, we will divide 10 and 5 on this one. Very well, thank you. Good morning. Good morning, Your Honor. My name is Joe Jacobson. I represent the Appellant Auto Court. I'm going to attempt to reserve five minutes of my time for rebuttal, and hopefully I'll manage to do that. First of all, thank you for giving us a separate argument, because we are the tree that is overlooked in this forest throughout this case. There were 240-plus applications. Our application was different than everybody else's, but we were thrown in with everybody else's. Our application is different because we actually, after the settlement agreement was written, we caused a change in the settlement agreement to include within the settlement thousands of non-VW dealers who were excluded from the settlement as originally drafted, and have caused these people to be able to receive tens of millions of dollars of proceeds that they would not have gotten under the original settlement agreement. We therefore, under the standards set, we help preserve, extend, however you want to call it, the common fund. I may get these things mixed up, but were you denied because you did not go through the process, or were you denied because the view was you didn't contribute because it was a mistake that would have been found anyway? I can't answer your question, Your Honor, because I do not know, because the order does not stay. There is nothing specific about us anywhere in the order. In Volkswagen's omnibus opposition, there is one line referring to our case, which simply states that we did not follow the process of the lien order. However, we are not under the lien order because we are not seeking to collect a portion of our client's payout on this. We are seeking a portion of the common fund to which we contributed. And the common fund that we're interested in, with all respects to the private counsel, we don't view the $175 million attorney fee fund as the common fund. We represent the $10 billion plus fund as the common fund, and it is, in fact, a common fund, even if it's structured in the form of a claims-made settlement. Do you believe that that $10 million to which you make reference is something that Volkswagen would owe in addition to the $175 million that it agreed to pay for attorney fees? Your Honor, I refer to a $10 billion. Oh, I'm sorry. And that is, in fact, the settlement fund. And that is a reversionary settlement fund. I'm talking about the total payment. Oh, yes, Your Honor. That is the common fund that was created. It's a $10,033,000,000 fund. Any amounts which are not distributed to claimants reverts back to Volkswagen. And Volkswagen, in fact, has a strong incentive not to pay out or not to reach the dealers, because while they talk in their briefs about, oh, Volkswagen has this great incentive to have a high level of participation, the level of participation that Volkswagen needs to satisfy its settlement with the Justice Department is 85 percent. So just as in the price is right, you want to get the price, the highest price of anyone but below the actual market price, here you want to come in, if you're Volkswagen, just above 85 percent participation. Because you can save $1.5 billion in payouts for the 15 percent that don't participate, and you don't get hit by the sanctions from the Justice Department. The facts in the – What steps did you take? You reviewed the settlement agreement. You found what you say is a mistake. It got amended to include these other people. And then what steps did you take to make sure you were part of the attorney's fee package? Well, we had several different roles in the case. We did have a role within the MDL case in that one of our clients, Eagle Auto, was, in fact, the named plaintiff in the Lanham Act. We had other work that we were given in connection with the Consumer Act. We followed the PTO with regard to those, and we ultimately did receive a payment for the work in those separate cases. This case, the case for which we seek a fee here, was not part of the MDL. This was a separate Missouri State class action, which was on the verge of class certification. And it was during a motion hearing a few weeks before the class certification hearing in which my partner, Alan Perez, happened to talk with the Volkswagen lawyers handling the case and said, I saw that settlement agreement you guys had. It's a pity it doesn't include our clients because it looks like a pretty good settlement for the class. And the VW lawyers, this is all in the record at pages 82 through 85 of our record excerpt. The Volkswagen lawyers said, well, I think it's supposed to include the dealers. And my partner says, well, it doesn't. Look, it says you have to be a registered owner. And Volkswagen says, well, the lawyer says, well, you're right. That doesn't include dealers. But I think the intent was you ought to call your PSC. So my partner called the PSC State Liaison Council, spoke to them about it. They said, we don't know what the answer is. There was a whole bunch of correspondence back and forth. Eventually, we were told to deal with a particular member of the PSC, actually the law partner of one of the named individuals of the PSC. My partner worked with him. They worked out the language that would be needed to change the contract. All that is in the record, counsel, with regard to the communications with counsel to try to clarify whether they meant to include setting the specific language aside, whether they meant to include your client or not. But as I understand it, you asked for around $400,000 in attorney's fees. Yes, ma'am. Right? And it seems like the bulk of that work was in connection with the state court litigation, some nearly 300 hours. Correct. Correct? And is there any indication in the record that the PRC, the steering committee or class counsel approved the payment and the work in connection with the state court litigation? Well, Your Honor, our theory isn't that they approved us pursuing the state court litigation. In fact, they were very much against us following. Or authorized by class counsel because it brings into play the compliance with PTO 11, doesn't it? No, Your Honor, and I'll explain why. First, they did not, we did not seek their approval to pursue our state action, and certainly they didn't want us to pursue the state action. They wanted to have a universal global settlement throughout the United States. And having our individual state action is actually detrimental possibly to the interest of the PSC because we're not going to settle our case for less than they settled it, and we have an opportunity of requiring, recovering more than they recovered for plaintiffs nationally, which would then put them in a bad light. Volkswagen wants us out of there, too. So, but we pursued our case because we were able to pursue it in state court. It gave us leverage. Nobody would talk to us if we didn't have this case pending. No, we wouldn't be able to have conversations with Volkswagen. We wouldn't be able to have conversations with PSC because, as you may have heard, they did tend to stonewall the conversations from people who weren't part of the chosen group, as we're calling it here today, unless they had some reason. But why doesn't PTO 11 still box you out of attorney's fees because you didn't go through this approval process that the district judge has set up? PTO 11, by its own terms, only applies to work within the MDL. By its own terms, it does not apply to work in any State court case. We were in a State court case. We are outside the scope of PTO 11. But I thought you were seeking fees because the work you did changed the MDL litigation. Correct, Your Honor. And I would refer you to the Wienerger case, Wienerger v. SI Management, which is a Ninth Circuit case from 2002, 301, Fed 3rd, 1115, at page 1121, note 3, which holds that in order to qualify to obtain money from a common fund in a class action, the work you do does not have to be in that litigation. Okay. But we have a system in that litigation for getting attorney's fees. So if the work you did changed something with regard to that litigation, then you were supposed to go through this procedure. The procedure is designed to require you to get preapproval to take steps to do common area work. So the notion of that order is you can't just go off and do common area work on your own in this case without first going to the plaintiff's steering committee, getting their approval, having their direction to go do it. What we have is a different situation in that we are pursuing our case, our separate case, outside the scope of PTO 11, which because of what we're doing gave us the ability to make the PSC at Volkswagen listen to us and correct their settlement agreement to include this whole group of people who were excluded. So we cannot seek preapproval for doing something that's outside the MDL. Yes, Judge Smith. Did you get paid in the Missouri litigation? No, we did not get paid in the Missouri litigation. They wanted us to stay our class certification, which we were about to get class certified. And we agreed only conditioned upon them amending the settlement agreement to include not just the Missouri non-VW dealers we represented, but all non-VW dealers. And they did. They made that amendment. I guess your essential argument about the procedure in PTO 11 is it didn't fit you, that it wasn't designed for your kind of claim. That's one of two. That's one argument, yes, Your Honor. And the second argument is that there are three bases to obtain attorney's fees from someone else, as we've discussed earlier. A statutory transfer, we don't have that. A contract, we agree. We're not part of the contract that VW agreed to pay this. A third one is helping to create, preserve, extend a common fund. The parties, VW and the PSC, cannot, by their contract, eliminate our right to claim under the common fund. They can say, hey, under our contract, the $175 million, you can only get fees if you follow what we say you're going to do. But the judge can make a system. Correct. And so your only way of winning is to show that you have to be outside that system for some reason. Right. And, Your Honor, let me address that. The judge can create a system. However, the judge is required to pay fees to law firms, lawyers, who in fact create, preserve, et cetera. It's not discretionary. If the facts show that you have helped create this common fund, you are entitled to a fee as a matter of law. And so while there is an order, and I applaud Judge Breyer's management of the case, I think, you know, you have a very complicated case. You've got a lot of law firms. You've got a lot of parties. You have an unusual circumstance, whereas, as I said, VW essentially, you know, admitted liability up front. But it's still a very complicated case, handled expeditiously. The orders are good. But by order, he still, within his jurisdiction, he needs to say, oh, wait a second. This case is different. This claimant is different because they, in fact, brought value to thousands of class members who would not have received money, and therefore I'm compelled to determine what's the appropriate fee for that, notwithstanding my orders for the ordinary run of the course. Remind me of what you did do. You, of course, saw what the court did. But what did your firm do, either with class counsel or with the judge, to try to show why you were distinct and why you were entitled to recover a part of the common fund? Well, Your Honor, we filed a fee motion, which detailed in declarations exactly the whole history of what happened. We were one of the very few cases against Volkswagen that had not been grouped into MDL. We were, because of particular reasons, we were remanded. We had our state cause of action. We filed our petition. It was, however, drowned in a sea of very similar petitions of the type that we described, where, you know, we did work ahead of time. You know, we didn't get part of the PSC. We want money for, we kept on top of things. We said, no, ours is different. We're not asking for all the stuff we did within the PSC, filing initial complaint, blah, blah, blah. We just say that in connection with the non-VW dealers, they were cut out of the deal as written. We saw that. We pushed. It was not like we presented to them and they said, oh, yeah, yeah. There was a lot of back and forth. Eventually, lead counsel said, I think the W dealers are in there, so let's make it happen. Talk to this PSC member and give them the language. We did that. We also told them, how can you contact all these dealers across the United States? Because we knew how to do that. That was information that we added. So they changed their process in order to include that additional notice method so that these people would get in there. I see I'm on orange light. You're getting down toward the end. But let me ask you this. So this is what you did. Your motion was in a sea of motions, and what happened? We were drowned in a sea of motions. We were the tree that was not seen because of the force. We received no individualized response by Volkswagen. The PSC, I don't know what they're doing here. They didn't object to our motion. They don't have any standing. They don't have an interest here. I don't know why they're here at all. But they didn't file anything. Volkswagen didn't file anything. And so all the factual statements we made were unrebutted, and the judge didn't make any separate indication about us as well. Now, there's a statement in one of the briefs, I believe in the PSC brief, saying, oh, yeah, there's a footnote where the judge said on page 13, they say the judge specifically mentioned AutoPort's application. It's not true. If you look at document 3178 at page 5, note 5, it's talking about people who filed, who provided documents regarding a consolidated class action complaint. It has nothing to do with changes to the settlement agreement. We stand apart from the others because we actually brought value, and we prevented tens of millions of dollars of this $10 billion class fund from reverting back to Volkswagen because now it's going to be distributed to non-VW dealers. I'll save my last 45 seconds for rebuttal. But what you want, the bottom line, is a remand to be considered separately. Well, or since there were no factual issues and our facts are undisputed, just enter the order saying pay to fee? Either one. Your Honors, I believe that AutoPort should be applauded for making a traditional argument that one makes on behalf of attorney's fees in a successful class action. They are here saying that due to their efforts, the size of the pie for the class was expanded. We have some factual issues with that. As we put forward in our brief, we think that their claim is wildly overstated. We think that the dealers were always, the non-VW dealers were always part of this. But they had a clear way to get compensated for that. All they had to do was submit through PTO 11. There is, they are wrong. PTO 11 makes you get pre-approval. That is incorrect, Your Honor. Okay. What PTO 11 says is that work has to be reported monthly to lead counsel. And when it's known that there's going to be different kinds of work done, it should be pre-authorized. But there were hundreds of lawyers working who could not possibly get pre-authorization for everything that they were doing. And so both from AutoPort and from the argument before, there's the incorrect impression that you had to get prior approval for everything. Paragraph 7 of Cabraser's declaration, which I referenced before, was an after-the-fact assessment of the work that had been done early on in securing plaintiffs in order to get that approved. That could not possibly have been consistent with a pre-approval requirement. So you're saying that, in this case, AutoPort, from your perspective, if they had done it the, in quotes, proper way, would have followed the PTO 11 format, even though the work in the state court was done before, they could have at least made the presentation arguing how they benefited their class. And if that had been disputed, it could have gone to the judge, the judge could have decided it, and then it would have been subject to audit and the like. Is that correct? That's exactly correct, Your Honor. And, in fact, the reason they didn't do that is because they could only muster up 10 hours of work, a very small amount of time that they contributed to this part of the effort. The bulk of their time and their $460,000 is calculated in the most bizarre way by taking other people's fee rates and multiplying it by an enhancement. But leaving all that... The bulk of the work was for the Missouri State Court litigation. Right. That's what they want to get compensated for. Now, the odd thing is that they defeated a removal to federal court because they waived claims to get themselves under the CAFA minimum. So they had very weak claims with no damages amounts, very small damages amounts to them. As a result of that, they proceeded in state court, and they now want a federal court to give them fees for what they did in state court. I don't think a federal court has jurisdiction over that. I don't know where the subject matter jurisdiction. I understand... I think he sees it differently. Doesn't he say that, look, you had the settlement. It didn't cover us, or it didn't cover these non-Volkswagen people. So, therefore, we made a bigger settlement, a bigger settlement, and, therefore, I want a percentage of that bigger settlement. You weren't doing anything until I came in and I said you did it wrong. That's correct, Your Honor, but I don't know where that money comes from. VW didn't agree to pay that money. Well, I guess, like the other fellow, he was saying he's going to invade the fund that's already there. Oh, no. Oh, no. In his reply brief, he says very clearly, I do not want to invade the $175 million that was paid through the agreement and PTO-11. He says that clearly, and I believe that once he says that, and he says I want to be paid for my state court work, that he has just taken himself outside of federal subject matter jurisdiction. Judge Nguyen, your opinion in Torkelson is not to the contrary, because there you had a Federal claim and there was a question of whether objectors enhanced the value of the Federal claim. So there's never an issue about Federal subject matter jurisdiction. Here, they made it so that the Federal court could not supervise their Missouri State action, and there's nothing there that Judge Breyer can adjudicate. In other words, they kept the amount under CAFA? Yes. Yeah. They did that in order to stay in state court, which is fine. They did that, and then they can sue Volkswagen for fees in state court. They may win. I suspect they won't, but they certainly have the ability to seek that, whatever remedies are available under Missouri law, which I don't claim any expertise on, but what they can't do is say that as nonparticipants in the MDL, in a class action in state court, we're entitled to fees outside the MDL process. Had they chosen to be state courts who – state court litigants who contribute to the pot here, they certainly could have come in and said, we're entitled to a piece of it, and to be quite candid, we would have given it to them. It was a small amount. It was a technical correction. We didn't think the correction was needed anyway, but once it was pointed out, why not? And we're not trying to hoard, keep them out of this – out of the work here. They could have done that. They chose not to. And once they chose not to, then they're outside Federal court jurisdiction altogether, altogether here. They raised the issue of standing with regard to class counsel, and I'm concerned about that. I want to give you a chance to briefly respond to that, because class counsel is paid, and so whether they win or lose here, it's not going to reduce any payments to class counsel, right? So what's the concrete injury that would be redressable by any ruling that we make here? Well, there's the claim against Volkswagen, and Volkswagen is going to address that. Our role, Your Honor, quite frankly, is we are the representatives of the proceedings below, and we were appointed class counsel by Judge Breyer. We are protecting the integrity of his decisions. They were treated – they say they were a tree among the fallen. They were a forest, but they are part of the order that denied fees to non-class counsel, and we have a responsibility as PSC and class counsel to protect the integrity of the rulings below. So I think that that's our standing. I understand he doesn't want money from us, and I'm quite pleased by that, to be candid, but that doesn't mean that we're absolved of our responsibility. Clarify that on rebuttal. What? Maybe you will clarify that on rebuttal. You think it's clear. All right. I think on his reply brief, he's as clear as can be. In fact, his motion to strike our brief made that point also. So we were not aware of this issue until after we had an opportunity to brief, but I don't think there's jurisdiction anymore. He's looking for a piece of the $10 billion, I gather, out of the total settlement, presumably. But will you address just a little bit more of the issue of jurisdiction? He obviously is here. The jurisdictional issue has not been one that has been highlighted. What is your argument? I think I understand it, but what is your best argument that Autoport – we don't have jurisdiction to hear this appeal? Because they are state court litigants seeking compensation for work they did in state court, and they are not seeking compensation from within the fee structure of the MDL process and the settlement agreement. So under the standard American rule that Your Honor referenced earlier, they have to find fees from something that they did. They cannot claim the common fund in federal court to be theirs. They have to claim that what they did in state court entitles them to compensation from Volkswagen. They are not seeking compensation against class members. The entire common benefit is based upon – But that argument doesn't apply to that little portion relating to correcting the class definition, though, right? No. That portion, had they sought it, would be fine. They could come in, PTO 11, make a claim. That's fine. But in their brief, they say, we don't want that money. We don't want any part of the money that was created by the settlement agreement. Having said that, they are now outside the federal court's jurisdiction. And it's a peculiar circumstance, and there's language in some of the opinions in this Court, like Torkelson and including Stetson, that there is jurisdiction to reach the ancillary questions pursuant to the main action in federal court. But those were all cases where the main action was in federal court. They're off in state court in Missouri. I don't think they have any business being – making a demand on Judge Breyer. Thank you, Your Honor. I'm going to share your time with Ms. V.W. Thank you, Your Honors. Yes, I am back. May it please the Court, again, Sharon Nellis for Sullivan and Cromwell on behalf of the V.W. defendants. If I may step back for just a moment, because I do think this gets a little complicated and sort of step through the thinking here. The contract, the settlement agreement, is the sole basis for coming after Volkswagen for fees. So if Autoport wanted fees from Volkswagen for purportedly obtaining a common benefit for the class, the only way to do that was through class counsel's fee petition. And I will – let me explain why, because it's a little unusual here. The – if you're seeking a common benefit, the common benefit exception to the American rule shifts costs to the beneficiaries. What it means is you have a plaintiff. A plaintiff does something that improves the class benefit, and it shifts the cost for paying those fees to the beneficiaries. It doesn't shift the cost of those fees to the settling defendant. Now, here we keep talking about a 10.3 – it's $10.03 billion fund. It's actually a $10.033 billion fund. But there is no common fund in the traditional sense here. And that is something this Court recognized in its order approving – affirming the final approval order last July. The way the fund works is – or it's not even – it's not even called a fund. It's called a funding pool. It's the notional amount that Volkswagen would pay if every single class member participated in the settlement and chose the most expensive of the myriad of options available to them. But every one of those dollars is paid by Volkswagen. So here – and I think Mr. Isikaroff has it exactly right – Autoport has said we're not looking for money from the PSC. We're not asking for money out of the $175 million fee award. So that means they must be seeking money from Volkswagen. And the only place they can get money from Volkswagen would have been through the common fee application. They are free to seek fees from their client, of course, in Missouri. But I think Judge Nguyen has it exactly right. What they're looking for here is $400,000 from Volkswagen for work done in a case outside of the MDL and the settlement agreement, which is perfectly clear that it is not entitled to that money from Volkswagen. It fails for the simple reason it's not in the settlement agreement. It also fails for the simple reason that Autoport expressly released the claim for fees that it obtained in other cases. Now, Autoport just ignores this. But the release language in the settlement agreement is quite plain. It releases any claims for attorney fees or costs other than the fees and costs awarded by the court in connection with the MDL settlement. Judge Breyer and joint parties from pursuing release claims, including direct claims for attorney fees against Volkswagen, and that release language was reviewed by the MDL court, included in the final approval order, and affirmed by this court. So they are barred from pursuing fees directly from VW for other case work. And that is completely consistent with this Court's order, again, on July 9, 2018, dismissing the appeals of two appellants who had challenged the settlement agreement, who were bound by the same release language. At that time, they were barred by the individual releases that were signed along with the class release that's kept in the final approval order. Having now approved that final approval order, everyone who participated in the class is bound by that release and adjoined from pursuing fees against Volkswagen for individual fee awards in other cases. And if I just could address it quickly, because I think it's helpful, I think it's important that we understand about the clarification of the class definition. And there is a very clear proof in the record that every single class definition every single vehicle that was held by a reseller was included in the original settlement. And that's because, as I just said before, every single dollar in that $10.033 billion funding pool was calculated by including those vehicles. You could not have gotten to that number if you had not included the vehicles. So here, I don't think there's a question but that there was a merely clarifying language that was accepted by both Volkswagen and the Plaintiff Steering Committee. And I would ask, I would just direct the Court to the Ninth Circuit case of class plaintiffs versus Jaffe, which I think is a compelling discussion of this very a non-class plaintiff where you have a plaintiff that obtains a purported benefit in a different case. Thank you. So, you have a little bit of time, not much. Your Honor, may I have 90 seconds for rebuttal? What? May I have 90 seconds for rebuttal? 90 seconds. Well, I don't think they probably object to giving you 90 seconds. Why not? We'll expand it by a full minute. I appreciate it, Your Honor. So, there we go. Okay. We're counting on something really important. I will make it worth the minute, Your Honor. All right. We are not claiming against the $175 million. That is a contractual side agreement to the fund. The settlement fund is $10 billion. That is a common fund. And no matter how you package it or slice it, it's still a common fund. It's a full amount of money to be paid. But as was pointed out by counsel for Volkswagen, the settlement agreement indicates the amount that Volkswagen was going to pay, which was $10 billion and some change. Yes. It also says there's $175 million in legal fees. Yes. The procedure was set up for doing that. What is the source, since there's a release of Volkswagen and there's a cap on the attorney fee? What is your source? If you're right, where do you get paid? Let me address the release part because the release is misleading. The release language itself does not apply to us because the release has an exception in it. It has an exception to, quote, other than fees awarded by the court in connection with the settlement, close quote. In connection with the settlement includes the common fund and our claim on the common fund. So we are not within the scope of the release. So the release is a bogus issue. With regard to the money, it's a $10 billion because that's the common fund. And even though they chose to do a side agreement and to pay attorneys' fees in addition to the side, that doesn't make it less of a common fund. That, in fact, is a very common practice today because it eliminates complaints about the attorneys' fees from being challenges to the overall settlement. So it smooths the settlement. You negotiate the settlement amount first. Then you negotiate the attorneys' fee apart. And it helps keep it separate and prevents objectors. That's why you do that. That is the money we're looking at. Thank you, Your Honor. Very much. I appreciate the extra time and thank you for your time. You're very welcome. We thank all counsel for your arguments. Very helpful. It's noted before this is an important case. We compliment the parties on their preparation and their argument. The case just argued is submitted and the court stands in recess for the day.
judges: M. Smith, Nguyen, Restani